IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHRISTIANA CARE HEALTH
SERVICES, INC.,

              Plaintiff;

v.

PMSLIC INSURANCE COMPANY,

              Defendant.

Civil Action No. 14-1420-RGA

## MEMORANDUM OPINION

John S. Spadaro, Esq., JOHN SHEEHAN SPADARO, LLC, Hockessin, DE, attorney for Plaintiff.

Bruce E. Jameson, Esq., John G. Day, Esq., PRICKETT, JONES & ELLIOTT, P.A., Wilmington, DE; James Sandnes, Esq., SKARZYNSKI BLACK LLC, New York, NY, attorneys for Defendant.

November 2, 2015

ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court is Defendant's motion to dismiss for lack of standing, failure to state a claim, and failure to plead fraud with particularity. (D.I. 6). The motion has been fully briefed. (D.I. 8, 10, 12). For the reasons set forth herein, Defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Plaintiff Christiana Care Health Services, Inc. ("Christiana Care") operates Christiana Hospital. (D.I. 1-1 at 9). Defendant PMSLIC Insurance Company provided medical liability insurance to Nadiv Shapira, M.D., a thoracic surgeon formerly affiliated with Christiana Hospital. (*Id.* at 10). Under this policy, PMSLIC was responsible for defending covered claims made against Dr. Shapira and paying any settlement or resulting judgment up to a limit of $1 million per occurrence or claim. (*Id.*).

In 2009, Dr. Shapira performed a medical procedure on John Houghton at Christiana Hospital that resulted in serious complications. (*Id.* at 11, 12). In 2011, Mr. Houghton and his spouse brought suit in Delaware Superior Court against Dr. Shapira, his medical practice (together, the "Shapira Parties") and Christiana Care, alleging medical negligence and loss of consortium (the "Houghton Action"). (*Id.* at 13). Consistent with its obligations under the policy, PMSLIC hired an attorney to defend the Shapira Parties in the Houghton Action. (*Id.*). PMSLIC monitored, supervised, and directed the defense of the Shapira Parties and made strategic litigation decisions on their behalf. (*Id.*).

In September 2012, after fifteen months of litigation, the Houghtons made a written demand to the Shapira Parties and Christiana Care seeking payment of $1.45 million in settlement of all their claims. (*Id.* at 16). Prior to trial and while the Houghtons' settlement

1

demand remained open, Dr. Shapira told PMSLIC that the Shapira Parties consented to settlement. (*Id.* at 17). PMSLIC refused to tender the policy's $1 million claim limit in settlement. (*Id.* at 23). As a result, the Houghton Action was tried before a jury, which awarded $3.75 million in damages to Mr. Houghton and $650,000 to Mrs. Houghton. (*Id.* at 17). The jury apportioned 65% of the total liability to the Shapira Parties and 35% to Christiana Care. (*Id.*). The Delaware Supreme Court affirmed the judgment in favor of the Houghtons and upheld the jury's apportionment of liability. *Shapira v. Christiana Care Health Servs., Inc.*, 99 A.3d 217, 224, 225 (Del. 2014).

In July 2014, the Shapira Parties executed a document assigning to Christiana Care their rights to recover insurance proceeds from PMSLIC and any claims they may have against PMSLIC arising out of or relating to the Houghton Action. (D.I. 1-1 at 23, 24). The assignment was drafted to include, without limitation, any and all claims, causes of action, and choses in action in connection with or arising from the Houghton Action for breach of insurance contract, bad faith breach of insurance contract, statutory consumer fraud, and compensatory or punitive damages. (*Id.* at 24). Dr. Shapira's policy, however, forbids assignment without PMSLIC's prior consent of "any contractual or legal right under or out of this policy including, without limitation, the right to prosecute and/or settle a claim by the insured against [PMSLIC] for breach of good faith or reasonable care in defending a malpractice action against the insured." (D.I. 8-1 at 13). The Shapira Parties did not obtain PMSLIC's consent to the assignment to Christiana Care.

Christiana Care thereafter initiated this litigation, bringing several claims against PMSLIC for its conduct during the Houghton Action, including its failure to tender the policy limits in response to the Houghtons' settlement demand. (D.I. 1-1 at 24–29). Christiana Care

2

claims that, as Dr. Shapira's assignee, it is entitled to a declaratory judgment and to recover for PMSLIC's breach of contract, bad faith breach of contract, and violation of the Delaware Consumer Fraud Act ("DCFA"). (*Id.*). Christiana Care also claims that it is entitled to recover in its own right for PMSLIC's violation of the DCFA. (*Id.* at 28–29).

PMSLIC now moves to dismiss Counts I–III of the Complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that Christiana Care does not have standing as Dr. Shapira's assignee, and under Rule 12(b)(6), arguing that the Complaint fails to state a claim upon which relief can be granted. (D.I. 8 at 8–22). PMSLIC moves to dismiss Count IV of the Complaint under Rule 12(b)(6), arguing that the DCFA does not apply to PMSLIC's conduct during the Houghton Action; under Rule 12(b)(1), arguing that Christiana Care lacks standing as assignee and in its own right to bring a claim under the DCFA; and under Rule 9(b), arguing that Christiana Care's consumer fraud claim is inadequately pled. (*Id.* at 22–24).

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

In reviewing a facial challenge to its subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court employs the same standard as it uses to evaluate a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Evanston Ins. Co. v. Layne Thomas Builders, Inc.*, 635 F. Supp. 2d 348, 352 (D. Del. 2009). In other words, the issue is whether the complaint's allegations, taken in the light most favorable to the plaintiff, show subject matter jurisdiction.

### B.  Rule 12(b)(6)

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56

3

(2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). A "court ruling on a motion to dismiss may not consider matters extraneous to the pleadings," except a court may consider documents "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis and internal quotation marks omitted).

## C. Rule 9(b)

Claims under the DCFA must be pled with particularity under Rule 9(b). *Homsey v. Vigilant Ins. Co.*, 496 F. Supp. 2d 433, 438 (D. Del. 2007). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

4

## III. ANALYSIS

### A. Christiana Care's Standing as Assignee

PMSLIC argues that Christiana Care lacks standing as Dr. Shapira's assignee. (D.I. 8 at 14–18). PMSLIC's argument that Christiana Care lacks standing as assignee is a facial attack on the Court's subject matter jurisdiction under Rule 12(b)(1). Thus, I accept Plaintiff's factual allegations as true and consider only the pleadings and Dr. Shapira's policy, as it is integral to the Complaint.

After judgment was entered in the Houghton Action, the Shapira Parties executed a document assigning to Christiana Care any and all of their claims, causes of action, and choses in action against PMSLIC in connection with or arising from the Houghton Action. (D.I. 1-1 at 23). Claims for bad faith breach of insurance contract are assignable under Delaware law. *Spine Care Del., LLC v. State Farm Mut. Auto. Ins. Co.*, 2006 WL 3334964, at *2 (Del. Super. Ct. Nov. 17, 2006) ("All insurance contracts contain an implied duty of good faith and fair dealing, and the Court finds nothing in Delaware law, either statutory or case law, that prevents assignment of claims based on breach of these duties." (citation omitted)); *see also Rowlands v. PHICO Ins. Co.*, 2000 WL 1092134, at *5 (D. Del. July 27, 2000); *Johnson v. Carolina Cas. Ins. Co.*, 1999 WL 33220032, at *1 n.1 (D. Del. Nov. 10, 1999); *Starr v. Nationwide Mut. Ins. Co.*, 548 A.2d 22, 25 (Del. Ch. 1988), *aff'd*, 575 A.2d 1083 (Del. 1990). PMSLIC argues that, notwithstanding the general assignability of bad faith breach of insurance contract claims, the Shapira policy prohibited the Shapira Parties' assignment to Christiana Care. (D.I. 8 at 14–15). The policy states that the insured shall have no right without PMSLIC's prior consent to assign "any contractual or legal right under or out of this policy including, without limitation, the right to prosecute and/or settle a claim by the insured against [PMSLIC] for breach of good faith or

5

reasonable care in defending a malpractice action against the insured" (the "Non-Assignment Provision"). (D.I. 8-1 at 13).

In Delaware, a prohibition of assignment of interest under an insurance policy prevents assignment of the policy before the insured-against loss has occurred, but does not prevent post-loss assignment. *Int'l Rediscount Corp. v. Hartford Accident & Indem. Co.*, 425 F. Supp. 669, 673 (D. Del. 1977); *Kent Gen. Hosp., Inc. v. Blue Cross & Blue Shield of Del., Inc.*, 442 A.2d 1368, 1370 (Del. 1982); *Clark v. Simon*, 1992 WL 354098, at *3 (Del. Super. Ct. Nov. 9, 1992), *modified on other grounds*, 1992 WL 390629 (Del. Super. Ct. Dec. 9, 1992). Assignments of already-accrued claims under an insurance contract are therefore effective even if the policy contains a non-assignment provision. *Int'l Rediscount Corp.*, 425 F. Supp. at 673; *Kent Gen. Hosp., Inc.*, 442 A.2d at 1370; *Clark*, 1992 WL 354098, at *3. Christiana Care argues that, because the Shapira Parties assigned their rights under the policy to Christiana Care after the insured-against medical negligence loss occurred, the Non-Assignment Provision could not prevent the assignment. (D.I. 10 at 16).

PMSLIC argues that the Non-Assignment Provision prevented the assignment because the pre-loss/post-loss distinction is a matter of contract interpretation that is inapplicable to the Shapira policy. (D.I. 12 at 10). PMSLIC's view is that a non-assignment provision can prevent assignment of even an already-accrued bad faith claim because "[a] policy may be assignable or not assignable, as provided by its terms." (D.I. 8 at 15 (quoting 18 Del. C. § 2720)). Unlike the non-assignment provisions considered in the Delaware cases expounding the pre-loss/post-loss distinction, the Non-Assignment Provision specifically prohibits not only assignment of Dr. Shapira's "contractual or legal right[s] under or out of this policy" generally, but also "the right to prosecute and/or settle a claim by the insured against [PMSLIC] for breach of good faith or

6

reasonable care in defending a malpractice action against the insured." (D.I. 8-1 at 13). Thus, PMSLIC argues that the Non-Assignment Provision is distinguishable from those held unenforceable post-loss because it "expressly contemplates and restricts the assignment of post-loss claims." (D.I. 12 at 10; *see* D.I. 8 at 16 n.3).

If the pre-loss/post-loss distinction were merely a matter of contract interpretation, as PMSLIC argues, the assignment to Christiana Care would be ineffective because the Non-Assignment Provision expressly forbids post-loss assignment.[1] This Court has indeed discussed the pre-loss/post-loss distinction as a matter of contract interpretation. *E.g., Int'l Rediscount Corp.*, 425 F. Supp. at 673 ("[W]hen faced with the construction of a clause limiting the assignability of interests in an insurance policy courts have interpreted such clauses to prohibit only the assignment of the insurance contract before loss."). The Delaware Supreme Court, however, clarified that the distinction is a matter of public policy and not merely contract interpretation. *Kent Gen. Hosp., Inc.*, 442 A.2d at 1370 (stating that "[t]he case seems to turn on public policy with regard to the non-assignment clause" and citing *Int'l Rediscount Corp.*, 425 F. Supp. 669, for the proposition that "in insurance law particularly there is a policy which invalidates a non-assignment clause in a contract after loss has been incurred"). Interpretation of a non-assignment clause is a matter of contract; "invalidation" of a non-assignment clause is an application of public policy.

Pre-loss and post-loss assignments are treated differently because the relationship between insurer and insured changes when an insured-against loss occurs. *See Kent Gen. Hosp., Inc.*, 442 A.2d at 1370. Prior to a covered loss, the insurer bears a risk dependent upon the

---

[1] As with any other contract, "if the relevant contract language is clear and unambiguous, courts must give the language its plain meaning." *Phillips Home Builders, Inc. v. Travelers Ins. Co.*, 700 A.2d 127, 129 (Del. 1997).

7

identity of the insured and has priced the policy commensurate with its assessment of the risk. *See id.*; *CNH Am., LLC v. Am. Cas. Co. of Reading, Pa.*, 2014 WL 626030, at *8 (Del. Super. Ct. Jan. 6, 2014). After a covered loss, the insurer bears a fixed obligation to pay and its "risk cannot be increased by a change in the insured's identity." *CNH Am., LLC*, 2014 WL 626030, at *8; *see Kent Gen. Hosp., Inc.*, 442 A.2d at 1370.

Public policy in Delaware favors free alienability of choses in action. *See Kent Gen. Hosp., Inc.*, 442 A.2d at 1371. Pre-loss non-assignment provisions are nevertheless enforced because the general preference for free alienability is overcome by insurers' legitimate interests in protecting themselves against risks they did not agree to cover. *Id.* at 1370; *see also Viking Pump, Inc. v. Century Indem. Co.*, 2 A.3d 76, 103 (Del. Ch. 2009) (applying New York law). After a covered loss occurs, an assignee's right to recover under an insurance policy is akin to a "mere right to receive payment." *Kent Gen. Hosp., Inc.*, 442 A.2d at 1370. Preventing assignment post-loss is therefore seen as "a mere act of caprice or bad faith" because an insurer's post-loss contractual obligation is not altered by a change in the insured's identity. *Int'l Rediscount Corp.*, 425 F. Supp. at 673 (quoting *Ga. Co-Operative Fire Ass'n v. Borchardt & Co.*, 51 S.E. 429, 430 (Ga. 1905)); *Kent Gen. Hosp., Inc.*, 442 A.2d at 1370; *CNH Am., LLC*, 2014 WL 626030, at *8. Consequently, pre-loss, but not post-loss, non-assignment provisions are generally enforced in Delaware.

Consistent with the preference for free alienability of choses in action, post-loss non-assignment provisions are ineffective to prevent assignment unless there is a countervailing public policy in a specific context. *See, e.g., Int'l Rediscount Corp.*, 425 F. Supp. at 673; *Kent Gen. Hosp., Inc.*, 442 A.2d at 1370–72; *Clark*, 1992 WL 354098, at *3. The only instance in which the Delaware Supreme Court recognized such a countervailing public policy was in the

8

context of health service corporation subscriber agreements. *See Kent Gen. Hosp., Inc.*, 442 A.2d at 1371–72. The court in *Kent General Hospital* held that non-assignment clauses contained in health service corporation subscriber agreements were not void as a matter of public policy under Delaware law. *Id.* at 1372.

The Non-Assignment Provision is unlike the one at issue in *Kent General Hospital*. The court there specifically distinguished contracts with insurance companies from contracts with health service corporations, stating that "[t]he uniqueness of health service corporations is recognized by exempting them from all other provisions of the insurance law unless a provision is specifically made applicable." *Id.* at 1371. Further, the court stated that it was "clear that [the Delaware] General Assembly contemplated that the health service corporation would be a special public interest organization distinct from insurance companies." *Id.* The Non-Assignment Provision here is in an agreement with an insurer, not with a health service corporation. The *Kent General Hospital* exception to the general rule that post-loss non-assignment provisions are unenforceable therefore does not apply to the instant case.

I recognize that there are sensible arguments in support of distinguishing non-assignment of claims for breach of insurance contract and bad faith breach of insurance contract from non-assignment of post-loss claims for insurance proceeds. A claim for breach of insurance contract, unlike a claim to collect insurance proceeds, is not a "mere right to receive payment." An assignment of bad faith claims, unlike an assignment of an already quantified obligation to pay proceeds, puts the insurer in a position to have to negotiate with, or litigate against, the assignee.

PMSLIC invites the Court to imagine how the Complaint would differ were Dr. Shapira the plaintiff, rather than Christiana Care. (D.I. 8 at 17). The Complaint may have differed in certain respects if Dr. Shapira had been the plaintiff. For example, had Dr. Shapira brought suit

9

against PMSLIC for failure to settle, the Complaint may not have alleged that PMSLIC's failure to settle was an attempt to force Christiana Care to bear a disproportionately high share of any settlement or that Dr. Shapira performed poorly as a witness. (*See* D.I. 1-1 at 20, 22). Still, because an assignee stands in the shoes of the assignor, *Int'l Rediscount Corp.*, 425 F. Supp. at 673, the relevant underlying allegations will necessarily be essentially the same regardless of who brings the claims. Thus, non-assignment provisions are generally unenforceable to prevent post-loss assignment of breach of insurance contract and bad faith claims as well as post-loss assignment of rights to insurance proceeds.

The Non-Assignment provision did not prevent the assignment to Christiana Care of Dr. Shapira's claims for breach of contract and bad faith breach of contract. Christiana Care therefore has standing as assignee to bring its claims.[2]

### B. Count I: Declaratory Judgment

PMSLIC argues that Count I of the Complaint, which seeks declaratory relief relating to PMSLIC's conduct in the Houghton Action, should be dismissed because it is redundant to Counts II and III. (D.I. 8 at 18). Federal courts are authorized to grant declaratory relief by the Declaratory Judgment Act. 28 U.S.C. § 2201(a) ("[A]ny court of the United States[] . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."). Courts have discretion to dismiss a declaratory judgment claim when issuing a declaratory judgment would serve no useful purpose.

---

[2] PMSLIC argues in the alternative that "even if the non-assignment clause itself did not bar the claim, the fact is that it is impossible for [Christiana Care] to allege the existence of a clear and express precedent to the suit—*i.e.*, that there is 'full compliance with all of the terms of this policy'" because Dr. Shapira and his practice assigned the suit in contravention of the Non-Assignment Provision. (D.I. 8 at 17). Because I hold that the Non-Assignment Provision did not prevent the post-loss assignment to Christiana Care, I also hold that Dr. Shapira did not fail to comply with the policy by making the assignment.

*Aluminum Co. of Am. v. Beazer E., Inc.*, 124 F.3d 551, 560 (3d Cir. 1997). A declaratory judgment would serve no useful purpose when, for example, the controversy would be resolved by the disposition of another claim in the case. *JJCK, LLC v. Project Lifesaver Int'l*, 2011 WL 2610371, at *6 (D. Del. July 1, 2011) ("If the declaratory judgment claim bears complete identity of factual and legal issues with another claim being adjudicated by the parties, the Court is within its discretion to dismiss the declaratory judgment action." (quoting *Aldens, Inc. v. Packel*, 524 F.2d 38, 52 (3d Cir. 1975)) (internal quotation marks omitted)). Additionally, "[a] declaratory judgment is inappropriate solely to adjudicate past conduct." *Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 374 (D. Del. 2008) (internal quotation marks omitted).

Christiana Care seeks a declaration that PMSLIC's conduct in the Houghton Action gave rise to a debt to the Shapira Parties, now assigned to Christiana Care, in the full amount of the judgment in the Houghton Action. (*See* D.I. 10 at 26). PMSLIC argues that the declaratory judgment claim should be dismissed because it is redundant to Counts II and III. (D.I. 8 at 18). All of the factual and legal issues relevant to the declaration Christiana Care seeks are before the Court as a result of its breach of contract and bad faith breach of contract claims. Whether PMSLIC owes to Christiana Care some or all of the amount of the Houghton Action judgment is an issue that would therefore necessarily be resolved by adjudication of Christiana Care's breach of contract and bad faith breach of contract claims. Thus, a declaratory judgment would serve no useful purpose.

PMSLIC also argues that the Complaint cannot state a claim for declaratory relief because the conduct alleged already occurred and there is no way for any party to conform its conduct to the declaration that the Complaint seeks. (D.I. 8 at 19). Christiana Care argues that

11

PMSLIC's continuing refusal to pay the portion of the judgment in the Houghton Action that exceeded the Policy's claim limit is a present and continuing wrong entitling it to declaratory relief. (D.I. 10 at 26). The alleged misconduct underlying Christiana Care's Complaint occurred in the now-concluded Houghton Action. The relevant parties are the Shapira Parties and PMSLIC. They are no longer involved in the Houghton Action. A declaratory judgment would not affect the parties' behavior toward one another. A declaratory judgment would therefore be inappropriate in this case. PMSLIC's motion to dismiss is granted with respect to Count I.

### C. Counts II–III: Duty to Settle

An insurer may be liable to its insured or the insured's assignee for bad faith failure to settle a lawsuit in which the insurer had a duty to defend the insured against the claimant. *McNally v. Nationwide Ins. Co.*, 815 F.2d 254, 259 (3d Cir. 1987); *see also Stilwell v. Parsons*, 145 A.2d 397, 402 (Del. 1958); *Gruwell v. Allstate Ins. Co.*, 988 A.2d 945, 949 (Del. Super. Ct. 2009). An insurer fails to settle in bad faith if the insurer does not have a reasonable basis for its failure to settle. *McNally*, 815 F.2d at 259; *Gruwell*, 988 A.2d at 948.

PMSLIC argues that its failure to tender the policy limits in response to the Houghtons' offer to settle cannot form the basis of a legally cognizable bad faith failure to settle claim because an insurer's duty to settle does not arise unless and until a firm and unconditional offer to settle within the policy limits is made. (D.I. 8 at 20). Christiana Care argues that PMSLIC's failure to settle was unreasonable and that PMSLIC was not relieved of its duty to reasonably respond to offers to settle simply because the Houghtons' settlement demand was in excess of the policy limits. (D.I. 10 at 21).

Although it cites the laws of other jurisdictions for support, PMSLIC acknowledges that there is no statement of Delaware law to the effect that an insurer's duty to settle is not triggered

12

unless there is a within-limits settlement demand. (D.I. 8 at 20). In Delaware, whether an insurer acted in bad faith is a fact-specific question of the reasonableness of its actions. *See McNally*, 815 F.2d at 259; *Gruwell*, 988 A.2d at 948. In light of PMSLIC's inability to demonstrate that the bright line rule it advances is the law of Delaware, I conclude that Counts II–III of the Complaint state a claim even though Christiana Care does not allege that the Houghtons made a within-limits settlement demand.

### D. Count IV: Delaware Consumer Fraud Act

PMSLIC argues that Christiana Care's claims under DCFA section 2513(a), on its own behalf and as the Shapira Parties' assignee, should be dismissed pursuant to Rule 12(b)(6) and Rule 12(b)(1) because the DCFA only applies to conduct made in connection with the purchase of merchandise. (D.I. 8 at 22–23). PMSLIC also argues that Christiana Care's DCFA claim should be dismissed because Christiana Care failed to plead it with the particularity required under Rule 9(b). (D.I. 8 at 24).

The DCFA section 2513 provides:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

6 Del. C. § 2513(a). According to a line of Delaware Superior Court cases, an insurance company may be liable to its insured under section 2513(a) when it creates a "condition of falsity" in connection with the sale of insurance. *Sammons v. Hartford Underwriters Ins. Co.*, 2010 WL 1267222, at *3 (Del. Super. Ct. Apr. 1, 2010); *Spine Care Del., LLC v. State Farm Mut. Auto. Ins. Co.*, 2006 WL 3334964, at *2 (Del. Super. Ct. Nov. 17, 2006); *Thomas v.*

13

*Harford Mut. Ins. Co.*, 2003 WL 220511, at *3–4 (Del. Super. Ct. Jan. 31, 2003), *sustained on reh'g in relevant part*, 2003 WL 21742143 (Del. Super. Ct. July 25, 2003); *Crowhorn v. Nationwide Mut. Ins. Co.*, 2001 WL 695542, at *6 (Del. Super. Ct. Apr. 26, 2001); *Mentis v. Del. Am. Life Ins. Co.*, 1999 WL 744430, at *6 (Del. Super. Ct. July 28, 1999). The Delaware Supreme Court recently affirmed a Superior Court judgment holding, in the alternative, and *contra* the previous line of cases, that section 2513(a) does not give rise to a private cause of action for complaints against insurance companies. *Price v. State Farm Mut. Auto. Ins. Co.*, 77 A.3d 272 (Del.), *aff'g* 2013 WL 1213292, at *10 (D. Super. Ct. Mar. 15, 2013). Assuming for the sake of argument that section 2513(a) does apply to private actions alleging fraud by insurance companies in connection with the sale of insurance, Count IV of the Complaint fails to state a legally cognizable claim for relief.

A company creates a condition of falsity by making a false or misleading statement or concealing, suppressing, or omitting information before or at the time of sale. *Sammons*, 2010 WL 1267222, at *3; *Brandywine Volkswagen Ltd.*, 306 A.2d at 27. Post-sale representations not connected with the sale or advertisement of merchandise do not fall within the purview of the DCFA. *Thomas*, 2003 WL 220511, at *4; *Price*, 2013 WL 1213292, at *11. The Complaint states that at the time the policy was sold, PMSLIC promised to make reasonable efforts consistent with Dr. Shapira's interests to settle claims of medical negligence on his behalf. (D.I. 1-1 at 28). The Complaint does not allege that, at the time of sale, PMSLIC concealed, suppressed, or failed to disclose information or otherwise created a condition of falsity in this promise to make reasonable efforts to settle. Instead, the Complaint alleges that PMSLIC created a condition of falsity years after the sale by failing to tender payment in settlement of the Houghton Action. (D.I. 1-1 at 28). Not only does the Complaint not allege that the condition of

14

falsity and the sale of the policy were contemporaneous, but it also does not allege any other connection between the condition of falsity and the sale. Absent such allegations, Count IV of the Complaint fails to state a legally cognizable claim for relief. Because the Complaint fails to state a plausible section 2513 claim, it follows that it is also inadequately plead under the heightened pleading standards of Rule 9(b).

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED** with respect to Counts I and IV of the Complaint and **DENIED** with respect to Counts II and III. A separate Order consistent with this Memorandum Opinion will be issued.